732

District Court, D. Delaware. February 3, 1930.

No. 697.

Charles F. Curley, of Wilmington, Del., and Hubert Howson (of Howson & Howson), of New York City, for plaintiffs.

Joshua R. H. Potts and T. Bertram Humphries, both of Philadelphia, Pa., and William T. Lynam, of Wilmington, Del., for defendant and intervener.

MORRIS, District Judge. In this infringement suit of S. S. Hepworth Company and Edith M. Horstman against Penick & Ford, Limited, Incorporated, in which Cresson-Morris Company, the manufacturer of much of the alleged infringing device, intervened, infringement is actually or in effect conceded, if the patent sued upon—reissue 15,115, to Mackintosh—is valid. The defense of invalidity rests upon the subordinate contentions of inoperative structure, anticipation, exhausted combination, aggregation, no invention, in view of the prior art, prior use, and laches. All the claims are in issue.

The patent and each of its claims is for a two-speed motor centrifugal machine, used mainly for drying sugar. Claim 1 reads thus:

"1. A centrifugal machine comprising a multispeed electric motor, a centrifugal basket or the like, a friction clutch drive connection between the motor and the basket, the low speed drive of the motor exceeding a proper unloading speed, in combination with an unloader serving by its drag on the material in the basket to cause the friction clutch to slip and thus to reduce the speed of the basket to one suitable for unloading, substantially as described."

Centrifugal machines were old. Separately considered, every element of the machine of the claims was old. As early as 1881 Weston disclosed in his patent, No. 236,389, a two-speed centrifugal machine. One speed was employed for drying, the other for unloading, as in Mackintosh. But his driving power for his slow, or unloading, speed was independent of that employed for high speed. The patents to Herr, No. 1,166,370 and No. 1,246,267, made use of a two-speed motor to obtain his two speeds. Yet he had no clutch between his motor and his basket. Consequently, when drying and when unloading, the speed of his basket was the speed of his motor. The machine of the patent to MacFarlane, No. 781,732, was likewise motor-driven. Moreover, MacFarlane inserted a centrifugal friction clutch, like that of the machine of the patent in suit, between his motor and basket. But the clutch was there employed to prevent the transference of the oscillations of the basket to the motor. He made no suggestion of a two-speed motor, or with respect to the speed at which his motor should be operated. The problem with which Mackintosh was confronted, notwithstanding these earlier patents, which approach the Mackintosh machine as closely as any, and his solution, are clearly and succinctly stated in his patent, where he said:

"Centrifugal machines are run at a high speed, the most popular size making about 1,000 revolutions per minute when drying sugar, whereas they must make only about 20 while being discharged by means of mechanical unloaders. The problem is to obtain these two speeds with a centrifugal machine driven by an electric motor, especially by an induction motor. It is entirely impracticable to get the two speeds by braking down the induction motor from the higher speed, or by giving it two windings. One reason that they cannot be had by braking down from the higher speed is that the rush of current, at the lower speed, would be too great for the motor to stand. This could be reduced by the use of a transformer, but the field would still be rotating at the higher speed, while the rotor would be at the lower speed. This would result in objectionable heating, if, indeed, the motor would stand it at all.

"As for two windings, it is practically impossible to make two so dissimilar as to give

anything like two speeds so far apart as 20 and 1,000.

"I achieve the desired result by using a two-speed motor and employing the form of drive that connects the motor to the centrifugal machine by means of a centrifugal friction clutch. This well-known form of drive has blocks, resting loosely in a cup secured to the spindle of the centrifugal machine, that are revolved in the cup by means of a driver secured to the spindle of the motor, and that are held to frictional contact with the inside of the cup by centrifugal force. In practice I find that it works well to run the motor at half the speed, for driving the machine against the unloader, that is used while it is doing its work. Half the speed means one-quarter of the centrifugal force and of the resulting frictional grip of the blocks on the cup. One-quarter the torque at one-half the speed results in no objectionable heating or rush of current, and the reduced frictional grip of the blocks is sufficient, or more than sufficient, to drive the centrifugal machine against the unloader. When just sufficient, the speed of the machine can be kept down to the 20 revolutions or so desired by the braking effect of the unloader itself, the motor continuing to run at one-half of its maximum speed while the blocks slip in the cup. When more than sufficient, the extra braking effect required, to keep the speed down, is had by means of the brake forming part of every centrifugal machine."

The defense of inoperativeness is predicated upon the contention that the specification and claims require that the valve be lifted from the bottom of the basket, and the plow or mechanical unloader introduced into the dry, and probably hard, sugar while the machine is operating at the low speed of approximately 600 R. P. M. Neither of these acts can be successfully accomplished at a speed even approximately that high. It was so known to those skilled in the art at the date of the patentee's conception, and, if the patent teaches that these acts must be done at that speed, then it is indeed true that the machine of the patent is not only wholly inoperative and useless, but it is dangerous and even deadly as well. The contention that the patent, nevertheless, permits no escape from the suggested construction rests upon the word "reduce" in the claims and the word "drops" in that sentence of the specification which states: "When the discharger plow w is swung by the operator into engagement with the material lining the interior of the basket, it exerts a drag upon the latter which causes the friction clutch to slip, and thus drops the

speed of revolution to that convenient for unloading (about 20 R. P. M.)."

But such an isolated and detached construction of these words is forbidden, not only by the knowledge of those skilled in the art at the time of the invention of the patent in suit that the basket of a centrifugal machine must be at a standstill, or nearly so, when the valve is lifted or the plow put in engagement, with the dried material in the basket, but, as well, by the following .words of the specification, which immediately precede those last quoted:

"The usual brake drum p is fast on the upper portion of the shaft m and is engaged by the brake band q in well-understood manner to halt the basket when desirable:

"The installation operates as above set forth. During the drying operation the motor is run at high speed (1,200 R. P. M.). When the material is dried and the valve in the bottom of the basket has been opened to permit its discharge, the motor is run at low speed (600 R. P. M.)."

I think it manifest that the patentee intended, and that the specification adequately discloses his intention, that the brake should be employed to bring the basket to a standstill after the drying operation for the removal of the valve, and that the plow should be inserted while the current is off, or as the motor is started at low speed, and that, consequently, the machine disclosed has not the infirmity of inoperativeness.

It is likewise obvious that no machine of the prior art contained in combination the four elements of the Mackintosh machine, which are (1) a two-speed motor, of which the low speed, approximately one-half of the high speed, exceeds the proper unloading speed of the basket; (2) a centrifugal friction clutch, which transmits from the motor to the basket a twining force, that varies with the square of the motor speed; (3) a centrifugal basket; and (4) a mechanical unloader or plow. There was no anticipation.

But the defendant and intervener urge that it required no exercise of the inventive faculties to place the MacFarlane clutch in the two-speed motor machine of Herr, or to substitute the two-speed motor of Herr for the motor of MacFarlane. Perhaps not, but that is a moot question, for it is not what Mackintosh did. For the first time in the art, he made use, in the functioning of his machine, of the law that the torque or twisting force applied through the clutch to the basket varies with the square of the motor speed, and so was the first to disclose a centrifugal

machine with a motor operating at low speed more rapidly than the proper unloading speed of the basket. A machine so constructed and so functioning is not an aggregation, for its elements interact. It possesses ease and economy of operation and safeguards the motor. Its conception was beyond the reach of the man skilled in the art, and drew upon the inventive faculties.

The further defenses of prior use and laches call for no comment, other than that each fails for want of adequate proof.

The decree must be for the plaintiff.